SHEPPARD MULLIN RICHTER & HAMPTON LLP
 A Limited Liability Partnership
  Including Professional Corporations
STEVEN B. SACKS. Cal. Bar. No. 98875
ERINN M. CONTRERAS, Cal. Bar No. 244563
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone: 415-434-9100
Facsimile: 415-434-3947

Attorneys for Trustee
JEFFREY I. GOLDEN

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:15-bk-12278-CB |
| MORGAN DREXEN, INC. | Chapter 7 |
| Debtor. | |
| JEFFREY I. GOLDEN, Trustee, | Adv. No. _____ |
| Plaintiff, | **ADVERSARY COMPLAINT FOR:** |
| v. | **1) BREACH OF FIDUCIARY DUTY** |
| DAVID L. WALKER, an individual; and RITA AUGUSTA, an individual. | **2) MISMANAGEMENT** |
| Defendants. | **3) WASTE OF CORPORATE ASSETS; AND** |
| | **4) NEGLIGENCE.** |
| | **JURY TRIAL DEMANDED.** |

SMRH:485182974.3     ADVERSARY COMPLAINT

Plaintiff JEFFREY I. GOLDEN ("Trustee") alleges as follows:

1. On April 30, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code and Jeffrey I. Golden was appointed Chapter 7 Trustee.

2. This is an adversary proceeding seeking damages pursuant to 28 U.S.C. Sections 157 and 1334 and Fed.R.Bankr.P. 7001(1). Trustee is the Chapter 7 Trustee of the bankruptcy estate of MORGAN DREXEN, INC. ("Morgan") and brings this action solely in that capacity on behalf of the estate.

## PARTIES

3. At all times mentioned herein, Morgan was a California corporation, qualified to do business and doing business in the State of California. Morgan filed a petition under Chapter 7 of Title 11 of the United States Code on April 30, 2015 (the "Filing Date") in this Court that initiated this Bankruptcy Case.

4. David L. Walker ("Walker") is an individual who was the Chief Financial Officer of Morgan from 2009 until 2015. Walker resides in Mission Viejo, California.

5. Rita Augusta ("Augusta") is an individual who was the Chief Operations Officer of Morgan from May 2009 until April 2015. Augusta resides in Tustin, California.

## JURISDICTION AND VENUE

6. This adversary proceeding arises under title 11, or arises in or is related to the Bankruptcy Case, within the meaning of 28 U.S.C. Section 1334(b). This Court therefore has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. sections 157 and 1334.

7. This adversary proceeding is not a core proceeding and is before this Court pursuant to 28 U.S.C. section 157(c). Plaintiff does not consent to having the Bankruptcy Court enter final judgment in this matter.

-1-

SMRH:485182974.3    ADVERSARY COMPLAINT

8. Venue is proper in this district pursuant to 28 U.S.C. section 1409(a).

9. Walker and Augusta (collectively, "Defendants"), and each of them, are subject to the jurisdiction of this Court. All of the acts or omissions alleged herein took place in this district.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

**A.    Summary.**

10. This case is about the failures of the Defendants, former officers, employees and/or directors of Morgan, to appropriately adjust Morgan's business model after significant changes to the law.

11. In 2010, the Federal Trade Commission ("FTC") enacted changes to the Telemarketing Sales Rule ("TSR Amendment"), which banned advanced fees for debt settlement practices.  At that time, Morgan's existing business model clearly violated the TSR Amendment because Morgan charged its customers up-front fees for their debt settlement practices. Defendants should have appropriately modified Morgan's business model to comply with the TSR Amendment, or should have pursued selling the 30,000 consumer files that were active at the time of the TSR Amendment and not subject to the TSR Amendment.

12. Instead of pursuing either option to continue in business or sell the business following the adoption of the TSR, Defendants instead chose a business strategy that caused all of the value of Morgan's business to be lost.  Defendants adopted a business strategy of claiming that up-front fees paid by clients were being charged in exchange for bankruptcy services, rather than for debt settlement services. The purported changes to Morgan's business model were illusory – Morgan continued to provide the same debt settlement services when retained, as clients pursuing bankruptcy as a means of resolving their debts would not also pursue debt settlement services.  Defendants did not exercise appropriate business judgment in

choosing this course of action and did not obtain advice from lawyers or other experts that the new business strategy would comply with the TSR.

**B.    Morgan's Business Model.**

13.    Morgan was founded in or around March 2007 by Walter J. Ledda ("Ledda"), who acted as Morgan's President and Chief Executive Officer throughout Morgan's existence.

14.    At the time Morgan was founded, many state regulations governing the debt relief industry provided an exemption for attorneys performing debt relief services.

15.    Morgan's business model was simple – Morgan contracted with various attorneys and law firms throughout the United States, who in turn would contract directly with consumers looking for debt relief services.  The consumers would pay an up-front fee directly to the attorneys in advance of any debt relief services being rendered.  The attorneys then paid the majority of the up-front fees to Morgan, who performed the debt relief services on behalf of the consumers.  The attorneys would retain only a small portion of the up-front fees received from consumers.

**C.    The TSR Amendment and Morgan's Response**

16.    In October 2010, the FTC initiated the TSR Amendment to, *inter alia,* prohibit debt relief companies like Morgan from receiving up-front fees before any debt relief services were performed.  Importantly, the TSR Amendment did not exempt attorneys performing debt relief services.

17.    Around the time of the TSR Amendment, Morgan purportedly changed its business practice.  Instead of having its affiliated attorneys provide consumers with one contract for debt relief services, Morgan altered its practice so that its affiliated attorneys would provide consumers with two contracts – one for debt relief services and one purportedly for bankruptcy-related services (the "Revised Model").

-3-

18. The Revised Model was created to make it appear as though the up-front payments being charged to consumers were related to the bankruptcy-related services purportedly to be performed by the attorneys, and not for the debt relief services. The Revised Model was a mere subterfuge, because it would never make sense for a consumer to pursue debt relief services (for which no up-front fee could be charged) and bankruptcy-related services (for which an up-front fee could be charged) simultaneously. Indeed, one of the principal goals of debt relief services is to avoid filing bankruptcy. If a consumer was willing to pay an up-front fee for bankruptcy services and pursue that course at the outset, there would be no need for debt relief services because the consumers' debts would be handled in the bankruptcy.

19. Prior to the effective date of the TSR Amendment, Defendants had two reasonable options: (a) change Morgan's business model in a manner that would comply with the TSR Amendment, or (b) sell Morgan's customer portfolio to another company who would comply with the TSR Amendment.

20. On the effective date of the TSR Amendment, Morgan was handling approximately 30,000 active consumer files that were not subject to the TSR Amendment. If Morgan had attempted to sell those files in 2010, the sales price would have been in excess of $3,000,000.

21. Instead of pursuing either of these options, Morgan instituted the Revised Model without obtaining any definitive legal advice confirming that the Revised Model would comply with the TSR Amendment, and without properly exercising their independent business judgment on behalf of Morgan.

22. Until the filing of the bankruptcy petition in this case, Defendants and the other directors and officers of Morgan had custody and control of Morgan's affairs, finances, and documents. Until the Trustee was able to obtain control and conduct his own review of these affairs, finances and documents he was not able to discover the misconduct of Defendants in connection with the business

model adopted by Morgan. Accordingly, the statute of limitations on claims asserted herein did not commence until the Trustee discovered such wrongdoing.

**D.    Defendants' Improper Payments to Ledda**

23. During the year prior to Morgan's bankruptcy filing, Defendants paid, or authorized Morgan to pay, Ledda at least $895,000 in the form of payroll transfers, personal expense payments and the payment of personal legal expenses.

24. None of these expenses were legitimate expenses of Morgan and they should not have been approved and paid. Defendants failed to exercise appropriate oversight to prevent such improper payments.

25. The Trustee has only recovered $200,000 of such amounts, with approximately $695,000 remaining outstanding.

## FIRST CLAIM FOR RELIEF

(Breach of Fiduciary Duty – Against Walker and Augusta)

26. Trustee realleges and incorporates herein by this reference the allegations of paragraphs 1 through 23, inclusive, of this Complaint.

27. As officers and/or directors of Morgan, Defendants owed Morgan fiduciary duties to act in the best interest of Morgan.

28. Defendants had the duty to exercise due care and diligence in the management and administration of the affairs of Morgan and in the use and preservation of its property and assets; the duty to exercise due care and diligence to ensure that Morgan's business model complied with applicable laws; the duty of loyalty to put the interests of Morgan above their own financial interests and above the financial interests of other officers, directors and employees of Morgan, including Ledda; and the duty of candor, including full and candid disclosure of all material facts related thereto. Defendants' misconduct involves negligent or knowing violations of their duties as directors, officers and/or managing agents of Morgan, and the absence of good faith on their part, which Defendants were aware or should have been aware, posed a risk of serious injury to Morgan.

29. To discharge these duties, Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of Morgan. By virtue of this obligation of ordinary care and diligence, Defendants were required, among other things, to:

    a. manage, conduct, supervise, and direct the employees, businesses and affairs of Morgan in accordance with laws, rules and regulations, so as to avoid damage to Morgan's interests, including changing Morgan's business model to comply with changes in the law;

    b. neither violate nor knowingly or recklessly permit any officer, director or employee of Morgan to violate applicable laws, rules and regulations, and to exercise reasonable control and supervision over such officers and employees; and to ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by Morgan; and

    c. not authorize, ratify, approve, facilitate or fail to rectify unearned, excessive and unapproved compensation, salaries or payments to employees, officers and directors of Morgan, including Ledda.

30. By reason of the conduct alleged herein, Defendants violated their fiduciary duties to Morgan of care, loyalty, reasonable inquiry, oversight, good faith and proper supervision.

31. As a direct and proximate result of the conduct of Defendants, Morgan has sustained general, special and consequential damages in an amount not yet fully ascertained but within the jurisdiction of this Court, the full amount of which will be proven at trial.

WHEREFORE, Trustee prays for judgment as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

(Mismanagement – Against Walker and Augusta)

32. Trustee realleges and incorporates herein by this reference the allegations of paragraphs 1 through 31, inclusive, of this Complaint.

33. By the actions alleged herein, Defendants' mismanaged Morgan's affairs and abandoned and abdicated his responsibilities and duties with regard to prudently managing the assets and business of Morgan.

34. As a direct and proximate result of Defendants' conduct, Morgan has sustained general, special and consequential damages in an amount not yet fully ascertained but within the jurisdiction of this Court, the full amount of which will be proven at trial.

WHEREFORE, Trustee prays for judgment as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

(Waste of Corporate Assets – Against Walker and Augusta)

35. Trustee realleges and incorporates herein by this reference the allegations of paragraphs 1 through 34, inclusive, of this Complaint.

36. By engaging in the wrongdoing alleged herein, Defendants wasted corporate assets by improperly utilizing and misappropriating corporate assets, damaging the goodwill and reputation of Morgan, exposing Morgan to civil liability and causing Morgan to become insolvent and bankrupt, among other things, for which they are liable to Morgan.

37. As a direct and proximate result of Defendants' conduct, Morgan has sustained general, special and consequential damages in an amount not yet ascertained but within the jurisdiction of this Court, the full amount of which will be proven at trial.

WHEREFORE, Trustee prays for judgment as hereinafter set forth.

### FOURTH CLAIM FOR RELIEF

(Negligence – Against Walker and Augusta)

38. Trustee realleges and incorporates herein by this reference the allegations of paragraphs 1 through 37, inclusive, of this Complaint.

39. As officers, directors and/or managing agents of Morgan, Defendants owed a duty to Morgan to exercise due care and reasonable diligence in

the performance of their duties as officers, directors and/or managing agents of Morgan.

40. Defendants negligently, carelessly, recklessly and unlawfully performed and breached their duties owed to Morgan by failing to exercise reasonable and prudent supervision over the management, policies, practices, controls and financial and corporate affairs of Morgan.

41. As a direct and proximate result of Defendants' conduct, Morgan has sustained and will sustain general, special and consequential damages in an amount not yet fully ascertained but within the jurisdiction of this Court, the full amount of which will be proven at trial.

**WHEREFORE**, Trustee prays for judgment as follows:

1. For judgment against Defendants for general, special and consequential damages according to proof and interest thereon;

2. For Morgan's costs of suit and attorneys' fees according to proof; and

3. For such other and further relief as the Court may deem proper.

DATED:  January 26, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Steven B. Sacks*
STEVEN B. SACKS
Attorneys for Plaintiff
JEFFREY I. GOLDEN, Chapter 7 Trustee of the bankruptcy estate of MORGAN DREXEN, INC.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all claims so triable alleged herein.

DATED: January 26, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Steven B. Sacks*
STEVEN B. SACKS
Attorneys for Plaintiff
JEFFREY I. GOLDEN, Chapter 7 Trustee of the bankruptcy estate of MORGAN DREXEN, INC.